ARDREY (Case No. 512)

[1 Fed. Cas. page 1094]

she becomes herself responsible for the injury which she ought to have prevented. In this case, the Spanish authorities ought to have restored the vessel to the owner when she was brought into San Andres; having failed to do so, the government was bound, through its minister, to have interposed before condemnation in England, and to have demanded her restoration; and if this demand had been made, the vessel could not have been lawfully condemned in England, but must have been restored. The American had a right to suppose that Spain would perform her neutral duties, and that England, upon her application, would restore the vessel. There was, therefore, a well-grounded spes recuperandi, if such a state of things could be deemed necessary to entitle the seamen to wages. The result has proved that there was foundation for a hope of recovery, for Spain has acknowledged the obligation, and paid the damages—or what amounts to the same thing, the commissioners have so decided, and the owner has recovered damages for the loss of his vessel, and for freight; and the recovery is against Spain, and founded upon the failure of Spain to perform her neutral duty.

The seamen being entitled to wages, the next question is, for what time? The libellant remained in the vessel until she was condemned, and the freight allowed is for the outward voyage. In the case of a neutral, wrongfully captured by a belligerent, and which the nation or its courts afterwards restores or pays for, and where freight for the outward voyage has been allowed, the seamen are entitled to wages up to the time of condemnation. The reason given is, that as the seaman has a right to suppose that the capturing nation and its tribunals will do their duty, he has a well-grounded hope that the vessel will be restored and allowed to proceed on her voyage, and that his services will, therefore, be needed. The same foundation for hope existed in this case; the owner had a right to expect that Spain would demand the release of the vessel, and that she would be accordingly restored; and allowed to proceed on her voyage; and that hope was not lost until the condemnation in the prize courts of England. This case, therefore, is entirely analogous to the capture of a neutral on her outward voyage, and when after condemnation and sale, the owner receives compensation in damages. The libellant is, therefore, entitled to wages up to the day of condemnation, but no longer.

The remaining question is, whether an account is to be taken, and the wages, to be reduced pro rata, on account of the expenses to which the owners have been subjected in prosecuting this claim, and on account also of the reduction to which they were compelled to submit, by reason of the deficiency of the fund out of which they were to be paid. The case of Sheppard v. Taylor, 5 Pet. [30 U. S.] 675, appears to be conclusive on this point. According to the principles adjudicated in that case, the freight and the ship itself, to its last plank, are liable to wages. The claim of the seamen is a preferred one, to be paid without any deduction for the losses or expenses of the owners; and damages in lieu of freight, or in lieu of the ship, stand on the same footing, according to this decision, with the freight or ship itself, and the wages are not liable to be charged for any share of the expenses which the owner incurred in prosecuting his claim for reparation—nor are they liable to abatement on account of the reduction of his compensation, occasioned by the insufficiency of the fund out of which he is compelled to accept payment. It is admitted, that the amount recovered for the ship and freight greatly exceeds the amount due for wages, upon the principles hereinbefore stated; and the libellant is, therefore, entitled to the full amount of his wages, up to the day of condemnation, deducting only the amount heretofore received by him. The decree of the district court is, therefore, reversed, and a decree made in favor of the libellant for the sum of $184.49 and costs.

---

## Case No. 512.

### ARDREY v. WADSWORTH.

[1 Cranch, C. C. 109.][1]

Circuit Court, District of Columbia. Dec. Term, 1802.

INSOLVENCY—EFFECT OF DISCHARGE—PENDING ACTION.

A plaintiff who has been discharged under the insolvent act of Maryland, of 1774, since the commencement of the action, is still competent to maintain it.

[See note at end of case.]

At law. Assumpsit. Non assumpsit and issue. The defendant offered evidence that the plaintiff had been released under the insolvent act of 1774, c. 28, since the bringing of this suit, and contended that the plaintiff's right of action was transferred to the marshal, and so the plaintiff has no subsisting cause of action.

THE COURT was of opinion that the plaintiff can still support the action. CRANCH, Chief Judge, doubting.

[NOTE. Act Md. 1774, c. 28, provided for the discharge of an insolvent debtor from imprisonment in certain cases, upon his filing a schedule of his assets, and turning the same over to the sheriff for the benefit of his creditors. Repealed by Act 1817, c. 183.]

[1][Reported by Hon. William Cranch, Chief Judge.]